### Southern Railway Company, et al. v. Routh.

(Decided November 20, 1914.)

#### Appeal from Bell Circuit Court.

1.. Nuisance—Temporary Damage to Real Property—Measure of Damages.—Where a nuisance is temporary, the measure of damages,

where the property is occupied by plaintiff, is the diminution in the value of the use of the property during the continuance of the nuisance or injury, and if the property be rented, it is the diminution in its rental value during the continuance of the nuisance or injury.

2.  Nuisance—Measure of Damages—Instructions.—In an action for damages for injury to real property resulting from a nuisance, an instruction which permits a recovery both for the diminution in the value of the use of the property and for annoyance and discomfort to plaintiff's family, is erroneous and prejudicial.

WM. LOW for appellants.

JAMES M. GILBERT and LEWIS F. DeBUSK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action for damages to her dwelling and store house in the city of Middlesboro, alleged to have been caused by a leaking water tank, plaintiff, Susan L. Routh, recovered a verdict and judgment against the Southern Railway Company and the Louisville & Nashville Railroad Company for the sum of $1,000. The railway companies appeal.

It appears that plaintiff owns a lot in Middlesboro which fronts 140 feet on 21st street and extends back a distance of 50 feet. The lot adjoins the railroad right of way on the south and Doncaster avenue on the north. Facing 21st street next to the railroad right of way there is located on the lot in question a two-story frame building about 20 feet wide and 44 feet long. The lower part of the building is used as a grocery and the upper story for living purposes. The south side of the building is about 10 feet from the railroad right of way. The rear of the building is about 6 feet from the end of the lot. North of the frame building and fronting on 21st street is a one and one-half story brick cottage, which is used by plaintiff and her family as a dwelling. The rear of this building is about four feet from the back line of the lot. During the latter part of the year 1909 the railroads located a water tank on their right of way about 20 or 30 feet southeast of plaintiff's store building. This tank was constructed of defective materials, and not only leaked considerably, but frequently overflowed. The water therefrom flowed on to plaintiff's lot and under her buildings. This water spread out across the lower end of the lot and kept it wet and muddy practically all the time. This condition continued up to the time of the first trial. According to plaintiff's husband, the rental value

of the property was practically destroyed. In his opinion, the store house, if there had been no leak in the tank, could have been rented for about $25 a month. His dwelling-house under the same conditions was worth about $18 or $20 a month. There was also evidence to the effect that the water overflowing the tank and falling on the ground caused considerable noise, which could be heard two or three hundred yards away, and that because of this noise plaintiff and his family could not sleep. A real estate agent fixed the rental value of the two pieces of property at about $33 a month, and gave it as his opinion that the presence of the leaking water tank reduced the rental value of the property about one-half. According to the evidence for the defendants, plaintiff's lot was naturally low and swampy. During the winter season it was overflowed by the creek. The store house was rented for $13 a month when the tank was erected. After that the rent was increased to $15 a month. The upper part of the store house was rented for $7 a month to one tenant and another tenant who was there paid $8 a month. After these tenants moved out the store house was occupied by plaintiff's husband. Besides the instructions authorizing a verdict by nine or more of the jury, and a finding for plaintiff against either or both of the defendants, the court gave the following instruction:

"If you shall believe from the evidence that the defendants, or either of them, negligently and carelessly erected the water tank mentioned in the evidence of defective lumber and material, and that water flowed from same and ran upon and over plaintiff's lot and that said lot and the houses situated thereon were rendered less desirable for occupancy and use, or if you believe from the evidence that the water from the said tank produced a noise that rendered the said houses less desirable as a place of occupancy and prevented plaintiff and her family from sleeping or caused them annoyance or inconvenience, then you ought to find for the plaintiff, Susan L. Routh, such a sum in damages as you may believe from the evidence will reasonably compensate her for the annoyance and discomfort to her and her family caused by the noise from said water, if any, and such other damage, if any, caused by said water to the use and occupancy of the brick house occupied by the plaintiff, as a residence, and for the reduction, if any, in the rental value of the store building, caused by said

water, not exceeding in all the sum of $2,500.00, the amount claimed in the petition."

The nuisance which caused the damage in this case is conceded to have been temporary. It was abated before the second trial. It does not appear that any repairs on the buildings were made necessary by the nuisance. In such a case we have repeatedly held that where property is occupied by plaintiff the measure of damages is the diminution of the value of the use of the property during the continuance of the nuisance or injury, but if the property be rented, it is the diminution in its rental value during the continuance of the nuisance or injury. Ewing v. City of Louisville, 140 Ky., 726, 131 S. W., 1016; Ky. Distilleries Co. v. Barrett, 112 S. W., 643; Pickerill v. City of Louisville, 125 Ky., 213, 100 S. W., 873; L. H. & St. L. Ry. Co. v. Roberts, 144 Ky., 820; 139 S. W., 1073; Cumberland Grocery Co. v. Bough, &c., 151 Ky., 641, 152 S. W., 565. It will be observed that the foregoing instruction on the measure of damages does not conform to this rule. It not only authorizes the jury to assess damages for the diminution in the value in the use of the residence, but authorizes them, in addition thereto, to assess damages for the "annoyance and discomfort to her (plaintiff's) family by the noise caused by the water." Annoyance and discomfort are not separate elements of damage for which a recovery may be had in addition to the diminution in the value of the use of the property. Such elements may be shown in evidence only for the purpose of showing the diminution in the value of the use. When it comes to measuring the damages, the diminution in the value of the use of the property necessarily includes annoyance and discomfort, which directly affect the value of the use. It is not, therefore, proper to permit a recovery both for the diminution in the value of the use and for annoyance and discomfort, which necessarily enter into and constitute a part of the diminution of such value. To do so is to allow double recovery. It follows that the instruction complained of is not only erroneous, but prejudicial.

The foregoing conclusion makes it unnecessary to determine whether or not the verdict is excessive.

Judgment reversed and cause remanded for new trial consistent with this opinion.