747 S.E.2d 468

Perrin BABB, Debbie Babb, Wayne Elstrom, Sarah Elstrom,
Alan Jackson, and Kathy Jackson, Plaintiffs,

v.

LEE COUNTY LANDFILL SC, LLC, Defendant.

Appellate Case No. 2012–212741.

No. 27299.

Supreme Court of South Carolina.

Heard March 19, 2013.
Decided Aug. 14, 2013.

130

134

Gary W. Poliakoff and Raymond P. Mullman, Jr., both of Poliakoff & Associates, P.A., of Spartanburg; John S. Nichols, of Bluestein, Nichols, Thompson & Delgado, LLC, of Columbia; William E. Hopkins, Jr., of Hopkins Law Firm, LLC, of Pawley's Island; and Richard H. Middleton, Jr., of The Middleton Firm, L.L.C., of Savannah, Georgia, all for Plaintiffs.

Kevin A. Dunlap, of Spartanburg, Pamela Baker, of Columbia, and Steven D. Weber, of Charlotte, North Carolina, all of Parker Poe Adams & Bernstein LLP; and William G. Beck, of Lathrop & Gage LLP, of Kansas City, Missouri, all for Defendant.

Amy Elizabeth Armstrong, of S.C. Environmental Law Project, of Pawley's Island, for Amicus Curiae Coastal Conserva-

tion League, South Carolina Wildlife Federation and Upstate Forever.

Elizabeth B. Parlow, of Ogletree, Deakins, Nash, Smoak & Stewart, PC, of Columbia, for Amicus Curiae National Solid Wastes Management Association, et al.

Ben A. Hagood, Jr., of Moore & VanAllen, PLLC, of Charleston, Mark T. Stancil, of Robbins, Russell, Engleert, Orseck, Untereiner & Sauber, LLP, of Washington, DC, for Amicus Curiae The Chamber of Commerce of the United States of America.

## CERTIFIED QUESTION

Justice HEARN.

Brought in federal district court on claims arising from offensive odors migrating from a landfill onto the plaintiffs' properties, this case comes to this Court for the resolution of several issues of law. The certified questions herein require us to delve into the gray areas of common law, environmental torts. Specifically, we consider the measure of damages for trespass and nuisance claims, the requirement that a physical, tangible invasion occur for a trespass to arise, the existence of a negligence claim based on odors, and the requirement of expert testimony to establish the standard of care of a landfill operator.

## FACTUAL/PROCEDURAL HISTORY

The plaintiffs, six individuals residing near a landfill operated by defendant Lee County Landfill SC, LLC (the Landfill) in Bishopville, South Carolina, initiated this action seeking to recover for substantial interference with the use and enjoyment of their property caused by odors emanating from the landfill. The plaintiffs asserted nuisance, trespass, and negligence claims based on the odors. Both before and during trial, the plaintiffs abandoned all claims for loss of use, diminution in property value, and personal injury, leaving only annoyance, discomfort, inconvenience, interference with enjoyment of their property, loss of enjoyment of life, and interference with mental tranquility as their damages claims.

Following a trial, the jury awarded the plaintiffs actual or compensatory damages totaling $532,500 on their negligence, trespass, and nuisance claims, with three plaintiffs receiving $77,500 and three receiving $100,000. The jury also awarded each plaintiff $300,000 in punitive damages. The Landfill filed motions for judgment as a matter of law or alternatively for a new trial. After determining that South Carolina precedent was not clear on state law issues raised in the post-trial motions, the District Court certified five questions to this Court.

## CERTIFIED QUESTIONS

The five questions, as certified to this Court by the United States District Court for the District of South Carolina, read:

1. Under South Carolina law, when a plaintiff seeks recovery for a temporary trespass or nuisance (asserting claims for annoyance, discomfort, inconvenience, interference with their enjoyment of their property, loss of enjoyment of life, and interference with mental tranquility and abandoning all claims for loss of use, diminution in value, and personal injury), are the damages limited to the lost rental value of the property?

2. Does South Carolina law recognize a cause of action for trespass solely from invisible odors rather than a physical invasion such as dust or water?

3. Is the maximum amount of compensatory damages a plaintiff can receive in any trespass or nuisance action (temporary or permanent) the full market value of the plaintiffs' property where no claim for restoration or cleanup costs has been alleged?

4. When a plaintiff contends that offensive odors have migrated from a neighbor's property onto the plaintiff's property, may the plaintiff maintain an independent cause of action for negligence or is the plaintiff limited to remedies under trespass and nuisance?

5. If an independent cause of action for negligence exists under South Carolina law when a plaintiff contends that offensive odors have migrated from a neighbor's property onto the plaintiff's property, does the standard of

care for a landfill operator and breach thereof need to be established through expert testimony?

## LAW/ANALYSIS

## I. TEMPORARY TRESPASS AND NUISANCE DAMAGES

The first question asks whether the lost rental value of property is the maximum amount of damages recoverable for a temporary trespass or nuisance.[1] While the Landfill argues that the temporary trespass and nuisance damages are limited to the lost rental value of the property, the plaintiffs argue that in addition to this measure of damages, they can also recover separate damages for annoyance, discomfort, and inconvenience. Specifically, the plaintiffs argue they can recover for "damages to the person incurred through the loss of enjoyment of the property." We answer this question in the affirmative, holding the damages recoverable for a temporary trespass or nuisance are limited to lost rental value.

From their earliest inception through the present day, the actions of trespass and nuisance have been limited to one's interest in property, rather than providing any protection to one's person. Trespass, as that term is used here,[2] arose from the medieval assize of novel disseisin [3] which was created for the protection of a landowner's interest in the exclusive pos-

---

1. The general concept of nuisance covers both public and private nuisances. Here, plaintiffs asserted only a private nuisance claim, and herein, the term "nuisance" is used solely to connote a private nuisance.

2. While trespass may mean any "unlawful act committed against the person or property of another," and in that sense is the mother of all common law tort liability, we use it here in the form in which it is now generally used to mean an action to recover for an unlawful entry by another onto one's real property. *Black's Law Dictionary* 1541 (8th ed.1999); *see also* Charles O. Gregory, *Trespass to Negligence to Absolute Liability*, 37 Va. L. Rev. 359, 361 (1951) (explaining trespass's role as the ancestor of modern torts). With the development of tort law over the intervening centuries, those other forms of trespass have become their own distinct causes of action with their own names.

3. "Disseisin" is "[t]he act of wrongfully depriving someone of the freehold possession of property." *Black's Law Dictionary* 506 (8th ed.1999).

session of land. George E. Woodbine, *The Origins of the Action of Trespass,* 33 Yale L.J. 799, 807 (1924); *see also* Theodore F.T. Plucknett, *A Concise History of the Common Law* 369–70 (5th ed.1956). Glanville, the great medieval legal scholar who was the first to comment upon the assize of novel disseisin, wrote that it existed to aid a person when another "unjustly and without a Judgment, has disseised another of his Freehold." R. Glanville, *The Treatise on the Laws and Customs of the Realm of England,* bk. XIII, ch. XXXII (John Beames trans. 1900). Thus, Glanville recognized the assize as limited to protection of one's property interests.

Developing from the assize of novel disseisin came the assize of nuisance, modern nuisance's medieval ancestor. *See* Restatement (Second) of Torts § 821D (1979); Bradford W. Wyche, *A Guide to the Common Law of Nuisance in South Carolina,* 45 S.C. L. Rev. 337, 340 (1994). The new writ also protected a landowner from interference with his rights in land and "closely resembled the modern cause of action for private nuisance, providing redress for interference with the use and enjoyment of plaintiff's land resulting from acts committed on the defendant's land." Jeff L. Lewin, *Boomer and the American Law of Nuisance,* 54 Alb. L. Rev. 189, 193 (1990); *see also* Restatement (Second) of Torts § 821D (stating that the assize of nuisance provided redress where there was an "indirect damage to the land or an interference with its use and enjoyment").

Blackstone, writing centuries later, described a trespass as a "species ... of real injuries, or wrongs that affect a man's lands, tenements, or hereditaments." 3 William Blackstone, *Commentaries* \*209. He went on to describe a trespass as "an entry on another man's ground without a lawful authority, and doing some damage, however inconsiderable, to his real property," and explained that the trespass cause of action protects a property owner's right to exclusive possession of his land. *Id.* Blackstone also wrote that a nuisance was a "real injur[y] to a man's lands and tenements," describing a private nuisance as "anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another." *Id.* at \*216. Thus, Blackstone recognized trespass and nuisance as actions protecting and limited to one's property rights.

 Arising from that common law heritage, under South Carolina law trespass and nuisance are limited to the protection of property interests. A trespass is any interference with "one's right to the exclusive, peaceable possession of his property." *Ravan v. Greenville Cnty.*, 315 S.C. 447, 463, 434 S.E.2d 296, 306 (Ct.App.1993). A nuisance, trespass's counterpart, provides a remedy for invasions of a property owner's right to the use and enjoyment of his property. *Clark v. Greenville Cnty.*, 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993) ("Nuisance law is based on the premise that '[e]very citizen holds his property subject to the implied obligation that he will use it in such a way as not to prevent others from enjoying the use of their property.'" (quoting *Peden v. Furman Univ.*, 155 S.C. 1, 16, 151 S.E. 907, 912 (1930))).

 Furthermore, the Restatement (Second) of Torts bolsters this conclusion by recognizing that those causes of action are limited to one's property rights, stating that "[a] trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it. A nuisance is an interference with the interest in the private use and enjoyment of the land...." Restatement (Second) of Torts § 821D (1979). It goes on to provide:

"Interest in use and enjoyment" also comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using lands is often as important to a person as freedom from physical interruption with his use or freedom from detrimental change in the physical condition of the land itself. This interest in freedom from annoyance and discomfort in the use of land is to be distinguished from the interest in freedom from emotional distress. The latter is purely an interest of personality and receives limited legal protection, whereas the former is essentially an interest in the usability of land ...

*Id.*

To the extent South Carolina's trespass and nuisance case law discusses annoyance, discomfort, interference with the enjoyment of property, loss of enjoyment of life, or interference with mental tranquility, those cases speak in terms of injury to one's property interest in the use and enjoyment of

property. For example, in *Woods v. Rock Hill Fertilizer Co.*, 102 S.C. 442, 86 S.E. 817 (1915), the plaintiff brought a nuisance action against a fertilizer plant near her home based on odors, dust, and small particles emanating from the plant. The Court held that allegations the plaintiff's mother and sister lived with her and suffered annoyance and discomfort due to the plant were relevant only because they tended to show "the nature and extent of the plaintiff's damages, since she has the right to have them live with her and enjoy the comforts of her home." *Id.* at 449, 86 S.E. at 819. Thus, the Court found the annoyance and discomfort allegations were relevant because they went to the harm to the plaintiff's property interest in the use and enjoyment of her property.

In *Davis v. Palmetto Quarries Co.*, 212 S.C. 496, 48 S.E.2d 329 (1948), work at a nearby quarry vibrated the plaintiff's home, threw dust and dirt onto her property, and subjected the home's inhabitants to loud noises. *Id.* at 498, 48 S.E.2d at 330. The plaintiff brought a nuisance action against the quarry, and the quarry later appealed the trial court's denial of the motion to strike from the complaint allegations that the plaintiff and her family's comfort and health had been impaired by work at the quarry. *Id.* at 449, 48 S.E.2d at 330–31. The Court found no error and held that while the allegations concerning the plaintiff's family members would not *alone* support a verdict, the allegations were "proper for a full statement of the alleged damages to the plaintiff *as the owner of her home.*" *Id.* at 499–500, 48 S.E.2d at 331 (emphasis added). Again, the Court found the allegations relevant only because they were tied to the plaintiff's property interest in the use and enjoyment of the property.

In *Lever v. Wilder Mobile Homes, Inc.*, 283 S.C. 452, 322 S.E.2d 692 (Ct.App.1984), the plaintiff brought a nuisance action alleging the defendant's sewage lagoon emitted offensive odors and leaked sewage into the plaintiff's fish pond, polluting the pond and killing his fish. The defendant appealed the denial of its motions for directed verdict and judgment notwithstanding the verdict. *Id.* at 454, 322 S.E.2d at 693. The court of appeals found evidence establishing a nuisance in the form of testimony that the plaintiff could no longer host family picnics or church groups on the property and could no longer garden there. *Id.* at 454, 322 S.E.2d at 694. That

evidence was not considered because of the harm the plaintiff suffered personally, but because it represented a loss of use and enjoyment of the property, as shown by the court relating the alleged harm back to the ability to use and enjoy the property.

Thus, from their inception through to today, trespass and nuisance have been actions limited to the protection of one's property interests. They have never served to protect against harms to one's person.[4] To permit plaintiffs to recover for annoyance and discomfort to their person as a component of trespass or nuisance damages, as opposed to as related to their property interests, would be to unhinge trespass and nuisance from the traditional property locus and transform them into personal injury causes of action. Not only would it represent a drastic expansion of trespass and nuisance beyond the realm of property, it would also represent a fundamental change in our tort law jurisprudence which does not permit recovery for sheer annoyance and discomfort. *See Dooley v. Richland Mem'l Hosp.*, 283 S.C. 372, 322 S.E.2d 669 (1984) (declining to recognize a negligent infliction of emotional distress cause of action and holding that damages for emotional distress are generally not recoverable in a negligence action absent some physical manifestation). In short, allowing recovery for personal annoyance and discomfort under the guise of trespass and nuisance would be the stealth recognition of an entirely new tort.

■■■ The damages recoverable for trespass and nuisance being strictly limited to damages to one's property interests, the only proper measure of them is the value of the property. A well-known principle of property law is that property consists of a bundle of rights. The value of a piece of property is the value of all of the rights one obtains through ownership of the property. Thus, included in the value of property are the rights of exclusive possession and use and enjoyment protected by the trespass and nuisance causes of action respectively. To the extent those interests are harmed by a temporary

---

4. Rather, over time the common law developed numerous causes of action—for example, battery and negligence—to permit a plaintiff to recover for harm to his person. Of course, a trespass or nuisance plaintiff also has those causes of action available to him to recover for harm to his person in addition to harm to his land.

trespass or nuisance, the harm would be reflected in the lost rental value of the property. *See S. Ry. Co. v. Routh*, 161 Ky. 196, 170 S.W. 520, 521 (Ct.App.1914) (holding that in measuring the damages for a nuisance, "the diminution in the value of the use of the property necessarily includes annoyance and discomfort, which directly affect the value of the use. It is not, therefore, proper to permit a recovery both for the diminution in the value of the use and for annoyance and discomfort, which necessarily enter into and constitute a part of the diminution of such value. To do so is to allow a double recovery.").

In other words, lost rental value includes the annoyance and discomfort experienced as the result of a temporary trespass or nuisance. The lost rental value of the property is the difference between the rental value absent the trespass or nuisance and the rental value with the trespass or nuisance. The rental value with the trespass or nuisance present would be less, in part, because a hypothetical renter would have to suffer the annoyance and discomfort of the nuisance or trespass. Thus, the lost rental value measures the monetary value of the harm to the property interest. Furthermore, because lost rental value includes damages caused by annoyance or discomfort, to permit a plaintiff to recover both the lost rental value plus an additional sum for annoyance and discomfort would be to permit a double recovery.

We have already recognized the lost rental value of property as the measure of and limit on damages for a temporary harm to property in our decision in *Gray v. Southern Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971). There, the plaintiff asserted a negligence claim against the defendant for pumping gasoline into a creek behind the plaintiff's home which later ignited, setting the creek ablaze. *Id.* at 561, 183 S.E.2d at 439. At trial, the defendant was granted an involuntary nonsuit on the ground the plaintiff had not sustained any actual or physical damages. *Id.* at 561–62, 183 S.E.2d at 439. Reviewing the grant of involuntary nonsuit, the Court stated:

> The general rule is that in case of an injury of a permanent nature to real property, by the pollution of a stream, the proper measure of damages is the diminution of the market value by reason of that injury, or in other words, the

difference between the value of the land before the injury and its value after the injury. Where the pollution of a stream results in a temporary or nonpermanent injury to real property, the injured landowner can recover the depreciation in the rental or usable value of the property caused by the pollution.

*Id.* at 569, 183 S.E.2d at 443. Thus, while not explicitly using the terms trespass or nuisance, the Court held that lost rental value is the proper measure of damages for a temporary harm to real property, which would include a temporary trespass or nuisance. *See also Ravan*, 315 S.C. at 465, 434 S.E.2d at 307 ("The measure of damages for permanent injury to real property by pollution, whether by nuisance, trespass, negligence, or inverse condemnation is the diminution in the market value of the property." (citing *Gray*, 256 S.C. at 569, 183 S.E.2d at 443)).

Contrary to the plaintiffs' assertions, the case of *Threatt v. Brewer Mining Co.*, 49 S.C. 95, 26 S.E. 970 (1897), does not establish otherwise. There, a farmer sued a neighboring mining operation for damage to the farmer's lands and odors from mining waste deposited into a waterway and from there onto the farmer's land. In the *Threatt* opinion, this Court wrote:

[T]his plaintiff is entitled to have the defendant to pay him damages for thus ruining, for the time, at any rate, his fertile bottoms. In the measure of the damages to the plaintiff for the injuries to his thirty-five acres of bottom lands, the jury should be limited, in ascertaining his damages, to the difference in the value of the lands from 8th May, 1890, to the date plaintiff brought his suit. But in the assessment of his damages from having a tainted—bad smelling—deposit thrown upon his bottom lands and in his ditches, they (the jury) are not limited to the actual injury in the market value of those lands from 8th May, 1890, to the date, in May, 1893, when the suit was brought; but they may find a reasonable, just compensation by way of damages to the plaintiff for this matter. This deposit has a threefold injury—first, it destroys the fertility of the lands; second, by filling up the ditches, it causes water to stand upon other parts of the land; and, third, the deposits exhale noxious odors. For the first and second injuries, the verdict

must be limited to the depreciation in the market value caused by the deposits from 8th May, 1890, to May, 1893. As to the third, the jury must estimate in dollars and cents what the bad odors from these deposits, between the same dates, may have damaged the plaintiff, if any such damage has occurred.

*Threatt*, 49 S.C. 95, 134, 26 S.E. 970, 983. We do not find that language to be controlling or even persuasive as to the issue before this Court. First, it states only that the jury may award damages in the amount the odors "damaged the plaintiff," but does not specify whether that means injury to the plaintiff's property interests or injury to the plaintiff's person. In other words, there is no clear holding that a party may recover for personal injury through a trespass or nuisance action. To the contrary, the opinion states that "[w]hat the plaintiff in the case at bar really seeks is to prevent the defenda[n]t, through its milling operations, from invading *his right to property*," and then goes on to describe each of the alleged damages, including the odors as an "element in this invasion of his right of property." *Id.* at 128, 26 S.E. at 981 (emphasis added). Furthermore, to the extent *Threatt* could be read as holding that trespass and nuisance damages extend to personal injury and beyond lost rental value, we believe *Threatt* was wrongly decided and directly contradicts our more recent decision in *Gray*.

We now explicitly extend the holding in *Gray* to cover trespass and nuisance claims for the reasons previously stated. Accordingly, we answer the certified question in the affirmative, holding that the lost rental value of property is the sole measure of temporary trespass and nuisance damages.

## II. TRESPASS FROM INVISIBLE ODORS

The second certified question asks whether South Carolina law recognizes a cause of action for trespass solely from invisible odors, rather than from a physical invasion such as dust or water. The plaintiffs argue South Carolina has abandoned the traditional rule that a trespass requires an invasion of property by a physical, tangible thing, and thus, the Court should recognize odors as constituting a trespass. The Landfill argues for the traditional rule, asserting that odors, due to their intangibility, cannot constitute a trespass,

but rather, only may give rise to a nuisance cause of action. We hold that South Carolina adheres to the traditional rule requiring an invasion by a physical, tangible thing for a trespass to exist, and accordingly, hold that odors cannot give rise to a trespass claim.

We first note the relevant distinctions between the trespass and nuisance causes of action which presumably give rise to the plaintiffs' arguments that intangible intrusions should be sufficient to constitute a trespass. First, recovery under a nuisance claim requires proof of actual and substantial injury, whereas trespass entitles a plaintiff to nominal damages even in the absence of any actual injury. *See Green Tree Servicing, LLC v. Williams,* 377 S.C. 179, 184, 659 S.E.2d 193, 195–96 (Ct.App.2008). Also, in order to rise to the level of an actionable nuisance, the interference or inconvenience must be unreasonable. *Winget v. Winn–Dixie Stores, Inc.,* 242 S.C. 152, 159, 130 S.E.2d 363, 367 (1963). The unreasonableness requirement reflects the unavoidable reality that persons must suffer some inconvenience and annoyance from their neighbors for modern life to carry on. *Id.* For trespass, there is no requirement of unreasonableness. Rather, any trespass, however small and insignificant, gives rise to an actionable claim. *Green Tree,* 377 S.C. at 184, 659 S.E.2d at 195–96.

This Court has yet to consider the tangible versus intangible distinction for trespass actions, but the plaintiffs assert the court of appeals held in *Ravan* that South Carolina no longer requires that an item be tangible in order to give rise to a trespass action. We find the *Ravan* decision contains no holding in relation to trespass by intangible things. There, the court of appeals affirmed a trial court's grant of a directed verdict for defendants on a trespass cause of action. *Ravan,* 315 S.C. at 465, 434 S.E.2d at 307. The court found there was no evidence the defendants' entry onto the plaintiffs' property was unauthorized, and thus, the trial court correctly granted a directed verdict on the claim. *Id.* at 464, 434 S.E.2d at 306. The opinion noted, anecdotally, "there is a trend in environmental law to recognize that the infiltration of contaminants onto a plaintiff's property constitutes as much an invasion of his possessory interest as the cutting of a tree on his property." *Id.* at 463, 434 S.E.2d at 306. Not only was that statement mere dicta in relation to the court's holding, the

court merely noted the "trend" without claiming to adopt it.
*See id.*

The traditional common law rule, the dimensional test, provides that a trespass only exists where the invasion of land occurs through a physical, tangible object. *See Adams v. Cleveland–Cliffs Iron Co.*, 237 Mich.App. 51, 602 N.W.2d 215, 219 (1999). Under that rule, intangible matter or energy, such as smoke, noise, light, and vibration, are insufficient to constitute a trespass. *Id.;* Larry D. Scheafer, Annotation, *Recovery in Trespass for Injury to Land Caused by Airborne Pollutants,* 2 A.L.R.4th 1054 (discussing the traditional rule). More specifically, under that rule, courts have held that odors do not give rise to a trespass cause of action because they are intangible. *See, e.g., Brockman v. Barton Brands, Ltd.,* No. 3:06–CV–332–H, 2009 WL 4252914, at *5 (W.D.Ky. Nov. 25, 2009) ("The odors ... which are visibly undetectable and transient, are not sufficient to state a claim for trespass, because a trespass only occurs when an object or thing enters a person's property and interferes with his or her possession or control."); *Ryan v. City of Emmetsburg,* 232 Iowa 600, 4 N.W.2d 435, 438–39 (1942) (holding that the odors from a sewage treatment plant would not give rise to a trespass action); *Wendinger v. Forst Farms, Inc.,* 662 N.W.2d 546, 554 (Minn.Ct.App.2003) ("Because odors do not interfere with the exclusive possession of land, an allegation that a confined-animal feeding operation emits invasive odors does not state a claim for trespass.").

In reaction to modern science's understanding of microscopic and atomic particles, a divergent line of decisions have discarded the dimensional test and permitted recovery for trespass without regard to whether the intrusion was by a tangible object, but rather by considering the nature of the interest harmed. Scheafer, *supra* (citing cases). The first seminal case in this line of decisions was *Martin v. Reynolds Metals Co.,* 221 Or. 86, 342 P.2d 790 (1959). There, the plaintiffs brought a trespass action against an aluminum smelter for fluoride gases and microscopic particulates they alleged the smelter emitted, which traveled through the air and settled on the plaintiffs' property. *Id.* at 791. The trial court entered a directed verdict for the plaintiffs, and the defendant appealed the trial court's ruling that the plaintiffs

stated a trespass cause of action. *Id.* Dispensing with the dimensional test, the Oregon Supreme Court held the intrusion of fluoride was a trespass despite its intangible nature. *Id.* at 797. The court reasoned that while the fluoride particles were individually minute and invisible, each particle that entered the plaintiffs' property was a physical intrusion, and but for their size, would undoubtedly give rise to a trespass action. *Id.* at 792. The court also noted cases finding intrusions by very small objects constituted a trespass, citing cases in which shot from a gun, particles of molten lead, spray from a cooling tower, and soot were held to be a trespass. *Id.* at 793. Additionally, the court cited cases in which vibrations of the soil and concussion of the air created a trespass. *Id.* The court then concluded that drawing a line between tangible and intangible intrusions had become arbitrary in light of modern science, writing:

> It is quite possible that in an earlier day when science had not yet peered into the molecular and atomic world of small particles, the courts could not fit an invasion through unseen physical instrumentalities into the requirement that a trespass can result only from a *direct* invasion. But in this atomic age even the uneducated know the great and awful force contained in the atom and what it can do to a man's property if it is released. In fact, the now famous equation $E = mc^2$ has taught us that mass and energy are equivalents and that our concept of 'things' must be reframed.

*Id.* In light of those considerations, the court held the determination of whether an invasion of the right to exclusive possession occurred, and thus whether a trespass occurred, is best determined by consideration of the energy and force of the thing intruding upon a plaintiff's land. *Id.* at 794.

Tellingly, the *Martin* court then found it necessary to immediately backpedal in order to constrain the expansion of trespass liability created by discarding the dimensional test. The court recognized that trespass imposes strict liability upon a trespasser regardless of whether the trespass caused any damages, and thus, the court's new test created the potential for manufacturers to be held liable for even the smallest intrusions. *Id.* at 796. The court also recognized that not all intrusions upon one's property are so great as to interfere with the right to exclusive possession. *Id.* at 794–95.

Accordingly, the court imposed a substantiality test to distinguish trespassory intrusions from non-trespassory intrusions, holding that an in order to constitute a trespass, an intrusion must be of sufficiently substantial force and energy as to interfere with the right to exclusive possession. *Id.* The court also held that consideration of the plaintiff's use of his property is relevant to whether a trespass exists, with some uses of one's property being ones "the law does not wish to protect ... from an invasion," and thus incapable of giving rise to a trespass cause of action. *Id.* at 794. Summarizing this new conception of trespass, the court wrote that it is "composed of components which include the character (including the magnitude) of the defendant's conduct in causing an intrusion and the character (including the magnitude) of the harm visited on the plaintiff in interfering with his interest in the exclusive possession of the premises." *Id.* at 795–96. However, as the court acknowledged, these modifications caused the trespass and nuisance causes of action to "coalesce." *Id.* at 795.

The next seminal decision in the divergent line was *Borland v. Sanders Lead Co., Inc.,* 369 So.2d 523 (Ala.1979), where the plaintiffs sued a lead smelter for lead and sulfoxide emissions they alleged settled on and damaged their property. *Id.* at 525–26. After a discussion of *Martin,* the court noted that in adopting the *Martin* holding it "might appear, at first blush, ... that every property owner in this State would have a cause of action against any neighboring industry which emitted particulate matter into the atmosphere, or even a passing motorist, whose exhaust emissions come to rest upon another's property." *Id.* at 529. However, the court found that *Martin*'s substantiality requirement obviates that concern. *Id.* Adopting the *Martin* rejection of the dimensional test, the court set forth a two-tiered concept of trespass. Where a trespass is "direct," as formerly required for a trespass to exist and including physical, tangible intrusions, there is no substantiality requirement and nominal damages may be awarded. *Id.* However, where the intrusion is indirect, including where the intrusion is intangible, the intrusion constitutes a trespass only if the plaintiff can show: "1) an invasion affecting an interest in the exclusive possession of his property; 2) an intentional doing of the act which results in the invasion; 3) reasonable foreseeability that the act done could

result in an invasion of plaintiff's possessory interest; and 4) substantial damages to the Res." *Id.* [5]

However, we find persuasive the Michigan Court of Appeals' rejection of this divergent line of decisions in *Adams v. Cleveland–Cliffs Iron Co.* There, the court adhered to the dimensional test, holding that intangible invasions are properly characterized as giving rise to nuisance or negligence actions and cannot give rise to a trespass action. *Adams*, 602 N.W.2d at 222. The court first noted that courts rejecting the dimensional test have been troubled by the principle that nominal damages are available for trespass, and in order to avoid "subjecting manufacturing plants to potential liability to every landowner on whose parcel some incidental residue of industrial activity might come to rest, these courts have grafted onto the law of trespass a requirement of actual and substantial damages." *Id.* at 221. But in adopting the substantiality requirement, those courts transmute the trespass cause of action into the nuisance cause of action. *Id.* The court went on to explain that "[w]here the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot, or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion, and the vehicle through which a plaintiff normally should seek a remedy is the doctrine of nuisance." *Id.* at 222. Finally, the court found that the substantiality requirement inherent in the divergent view endangers the sanctity of the right to exclusive possession, explaining: "The law should not require a property owner to justify exercising the right to exclude. To countenance the erosion of presumed damages in cases of trespass is to endanger the right of exclusion itself." *Id.* at 221. Accordingly, the court concluded it would retain the dimensional test because it safeguards "genuine claims of trespass and keep[s] the line

5. While rendered irrelevant by our holding herein, it is worth noting the *Borland* court explicitly stated that even after dispensing with the dimensional test and adopting the *Martin* rule, "[t]he classic cases of the barking dog, the neighboring bawdy house, noise, smoke, fumes, or *obnoxious odors* generally invoke the doctrine of the law of nuisance," rather than trespass, because "[t]hese intrusions do not typically result in any actionable damages to the Res; the injury caused by such acts usually results in a diminution of the use value of the property causally related to the harmful conduct made the basis of the claim." *Id.* at 530 (emphasis added).

between the torts of trespass and nuisance from fading into a wavering and uncertain ambiguity." *Id.* at 223 (internal quotation omitted).

We acknowledge that the dimensional test is an imperfect rule. It does not comport with modern science's understanding of matter and the relationship between matter and energy. However, we question whether any rule can perfectly distinguish between those things that intrude upon the right to exclusive possession of land and those that do not. The right to exclusive possession is an artificial construct incapable of precise definition or measurement and thus, defies the creation of a perfect rule to measure intrusions upon it.

Imperfections also plague the divergent line of decisions rejecting the dimensional test and their new form of trespass. The initial imperfection and that from which the others arise is that trespass is a strict liability theory under which a plaintiff may collect nominal damages for any intrusion regardless of whether it caused harm. The dimensional test traditionally stood as a bulwark excluding from trespass those intrusions not substantial enough to affect the right to exclusive possession. Without the dimensional test, even the most ephemeral intrusion—the exhaust from a passing car, the sound waves from neighbors talking, or even a sneeze that carry onto one's land—would constitute a trespass and an entitlement to at least nominal damages. In order to avoid that absurd result and the arresting effect it would have on modern life, those courts rejecting the dimensional test are compelled to adopt a substantiality requirement to distinguish between those intrusions substantial enough to constitute a trespass and those too insubstantial to do so.

Lacking a perfect measure of when one's right to exclusive possession has been infringed and comparing the merits and demerits of the dimensional test and the divergent view with its substantiality requirement, we conclude the dimensional test is superior to the divergent view. First, adoption of the substantiality requirement would seriously undermine the protection afforded the important right of exclusive possession, whereas the dimensional test maintains the strict liability protection afforded that right. Property is commonly conceptualized as a bundle of rights, and among the

rights some are particularly fundamental and as such receive greater protection than others. For example, because human society cannot function without persons experiencing some reduction in the use and enjoyment of their property due to others' use of nearby property, nuisance law only protects landowners against substantial harm from others using their property unreasonably. However, the right of exclusive possession is fundamental. Without it, other rights in the bundle would be rendered nearly worthless. For example, one's ability to use and enjoy property would be severely curtailed by others being permitted to come onto the property freely and do as they please. Accordingly, the common law has traditionally accorded absolute protection to the right of exclusive possession through trespass's provision of liability and damages for any trespass, no matter how insignificant. The divergent view's imposition of a substantiality requirement as an element of trespass removes the former strict protection of the right of exclusive possession and transforms trespass into nuisance. We believe the distinction between trespass and nuisance is important due to the extra protection needed for the right of exclusive possession. The dimensional test, while not perfect, provides a workable rule that roughly tracks the line between those things that interfere with the right to exclusive possession, and thus, are a trespass, and those that merely interfere with the right to use and enjoyment, and thus, are a nuisance.

Furthermore, the dimensional test possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct. The substantiality requirement is a fact-specific, case-by-case rule, whereas the dimensional test, as applied to different intrusions over time, yields a stable rule as to what rises to the level of a trespass. Thus, the dimensionality test gives members of the public some idea of what constitutes a trespass and enables them to conform their conduct to the standard. The substantiality test would leave them uncertain as to whether they would be liable in trespass for certain actions. The rule would thus result in inefficient behavior because persons would forego some legally permissible and socially and economically beneficial activities due to uncertainty as to whether the activities would constitute a trespass under the substantiality test. *See* Issac Ehrlich &

Richard A. Posner, *An Economic Analysis of Legal Rulemaking*, 3 J. Legal Stud. 257, 262–64 (1974) (discussing the social costs and economic inefficiencies imposed by imprecise legal standards).

Finally, as previously discussed, the divergent view would transform trespass into nuisance. Nuisance already exists to remedy substantial harms to property, and thus, the divergent view leaves property owners with less, rather than more, protection of their property rights.

For these reasons, we answer this question in the negative. South Carolina does not recognize a trespass cause of action for invisible odors. Rather, South Carolina hews to the traditional dimensional test and only recognizes intrusions by physical, tangible things as capable of constituting a trespass.

### III. MAXIMUM RECOVERABLE DAMAGES FOR TRESPASS OR NUISANCE

The third certified question asks whether the damages for any trespass or nuisance action, temporary or permanent, are limited to the full market value of the plaintiff's property where no claim for restoration or cleanup costs were alleged. This question is related to the first question dealing with whether damages for temporary trespass and nuisance are limited to lost rental value, and the reasoning employed there applies with equal force here. Thus, for the reasons stated in regards to question one and having already held that the damages for temporary trespass or nuisance are limited to lost rental value, we hold that the damages for permanent trespass or nuisance in South Carolina are limited to the full market value of the property.

### IV. NEGLIGENCE CAUSE OF ACTION FOR OFFENSIVE ODORS

The fourth question asks whether a negligence cause of action may arise from a plaintiff's contact with offensive odors created by a defendant. We hold that while it may be possible for a plaintiff to recover in negligence for offensive odors, we stress that such a claim would have to satisfy the

elements of negligence like any other claim, and the mere offensive *smell* of odors would not be enough.

 To prevail on a negligence claim, a plaintiff must establish duty, breach, causation, and damages. *Sherrill v. Southern Bell Tel. & Tel. Co.*, 260 S.C. 494, 499, 197 S.E.2d 283, 285 (1973). Generally, under South Carolina law, the damages element requires a plaintiff to establish physical injury or property damage. Damages for emotional or mental suffering are typically not recoverable, unless there is some physical manifestation of the emotional distress. *See Dooley*, 283 S.C. 372, 322 S.E.2d 669 (declining to recognize a negligent infliction of emotional distress cause of action and holding that damages for emotional distress are generally not recoverable in a negligence action absent some physical manifestation). Thus, the mere annoyance, inconvenience, or discomfort a plaintiff may suffer from offensive odors is not sufficient to establish a negligence claim. Accordingly, we answer this question in the affirmative, but hold that a negligence claim based on offensive odors is subject to the same standard elements as any other negligence claim, including the limited damages upon which a negligence claim may be premised.

## V. STANDARD OF CARE

 Finally, the fifth question asks, assuming a plaintiff can make out a negligence cause of action based on offensive odors that have migrated from a neighbor's landfill onto the plaintiff's property, must the standard of care for a landfill operator and breach thereof be established through expert testimony. The determination of whether expert testimony is required is a fact-specific inquiry that can only be made on a case-by-case basis, and due to the posture of this case and the limited record before this Court, we can do no more than state the guidelines to be applied in particular cases.

 The general rule in South Carolina is that where a subject is beyond the common knowledge of the jury, expert testimony is required. *See Green v. Lilliewood*, 272 S.C. 186, 192–93, 249 S.E.2d 910, 913 (1978). Conversely, where a lay person can comprehend and determine an issue without the assistance of an expert, expert testimony is not required. *See O'Leary–Payne v. R.R. Hilton Head, II, Inc.*, 371 S.C. 340,

349, 638 S.E.2d 96, 101 (Ct.App.2006) ("[E]xpert testimony is not necessary to prove negligence or causation so long as lay persons possess the knowledge and skill to determine the matter at issue." (quoting F. Patrick Hubbard & Robert L. Felix, *The Law of South Carolina Torts* 167 (2d ed.1997))). Deciding what is within the knowledge of a lay jury and what requires expert testimony depends on the particular facts of the case, including the complexity and technical nature of the evidence to be presented and the trial judge's understanding of a lay person's knowledge. *See Sharpe v. S.C. Dep't of Mental Health,* 292 S.C. 11, 14, 354 S.E.2d 778, 780 (Ct.App. 1987) ("The application of the common knowledge exception to the requirement of expert testimony in proving negligence depends on the particular facts of a case."). Ultimately, due to the fact-specific nature of the determination, it is a question that must be left within the discretion of the trial judge.

## CONCLUSION

For the reasons stated, we answer the certified questions as follows. As to question one, we hold the damages recoverable for a temporary trespass or nuisance claim are limited to the lost rental value of the property. As to question two, we hold a trespass exists only when an intrusion is made by a physical, tangible thing. As to question three, we hold the damages recoverable for a permanent trespass or nuisance claim are limited to the full market value of the property. As to question four, while we recognize that a negligence claim based on offensive odors is possible, we stress that such a claim would have to satisfy all the elements of negligence like any other negligence claim. Finally, as to question five, we are unable to make a definitive determination as to whether establishing the standard of care of a landfill operator in regards to offensive odors requires expert testimony, but offer the guidelines for making such a determination and entrust that determination to the discretion of the trial judge.

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur.