**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

James G. Sercu and Sherri A. Sercu, Respondents,

v.

Douglas Steven Hart, Appellant.

Appellate Case No. 2023-001417

———————

Appeal From Lexington County
James O. Spence, Master-in-Equity

———————

Unpublished Opinion No. 2025-UP-200
Heard March 13, 2025 – Filed June 18, 2025

———————

**AFFIRMED**

———————

Charles Cantzon Foster, II, of Foster Law Offices, LLC, of Columbia, for Appellant.

James Randall Davis and Matthew Gordon Rogers, both of Davis Frawley, LLC, of Lexington, for Respondents.

———————

**PER CURIAM:** James and Sherri Sercu and Douglas Hart are neighbors who live on adjacent lots. The Sercus access their lot (Lot 2) by crossing Hart's lot (Lot 1) because Lot 2 is landlocked. Additionally, the utility lines for Lot 2 run through Lot 1. The Sercus filed a complaint, claiming Hart obstructed and interfered with their right to the use of easements for access and utilities. Hart filed a

counterclaim, arguing there were no valid easements and the Sercus' use of the alleged easements was therefore trespass.  The master-in-equity found there were valid easements, therefore there was no trespass, and awarded the Sercus actual damages and punitive damages for negligence and private nuisance.  On appeal, Hart argues the trial court erred in (1) finding the Sercus have easements across Lot 1, (2) denying his trespass claim, and (3) awarding actual and punitive damages.  We affirm.

## I.  Easements

### A. Access Easement

First, we find the master did not err in finding an access easement for Lot 2 over Lot 1.  *See Murrells Inlet Corp. v. Ward*, 378 S.C. 225, 231, 662 S.E.2d 452, 455 (Ct. App. 2008) ("In an action at law tried without a jury, the [master]'s findings of fact will not be disturbed on appeal unless there is no evidentiary support for the [master]'s findings."); *id.* at 231, 662 S.E.2d at 454 ("The determination of the existence of an easement is a question of fact in a law action . . . .").  At one time, Richard Hanson owned the land that later became a subdivision called The Woods at Lake Murray.  He subdivided the land into lots numbered one through four and sold them with reference to a plat (the Plat).  The Plat delineates each lot, as well as the location of the access easement, and contains the following language in the designated easement location: "[twenty-five-foot] access [easement] on [and] across Lot 1 for the benefit of Lot 2."  Additionally, each deed in the chain of title for Lot 2 references the Plat.  Therefore, we hold the grantees of Lot 2 acquired the access easement.  *See Davis v. Epting*, 317 S.C. 315, 318, 454 S.E.2d 325, 327 (Ct. App. 1994) ("Where land is subdivided, platted into lots, and sold by reference to the plats, the buyers acquire a special property right in the roads shown on the plat."); *id.* ("If the deed references the plat, the grantee acquires a private easement for the use of all streets on the map."); *Murrells Inlet Corp.*, 378 S.C. at 233, 662 S.E.2d at 456 ("As to the grantor, who conveyed the property with reference to the plat, and the grantee and his successors, the dedication of the easement is complete at the time the conveyance is made."); *Carolina Land Co., Inc. v. Bland*, 265 S.C. 98, 105, 217 S.E.2d 16, 19 (1975) ("[W]here a deed describes land as is shown as a certain plat, such becomes a part of the deed."); *Boyd v. Bellsouth Tel. Tel. Co.*, 369 S.C. 410, 416, 633 S.E.2d 136, 139 (2006) (explaining "[w]hatever easements are created by implication must be determined as of the time of the severance of the ownership of the tracts involved").

We acknowledge Hart's argument that there are discrepancies between the Plat and

the property description in the deeds, including the title of the Plat[1] and the date it was prepared.  We also note that the Plat was certified by Cliff Hall before the deed to Hall Builders LLC was filed, and that Hall never owned Lot 1.  However, the Plat was prepared while Hanson still owned the entire subdivision.  The Plat divides the property into four lots, which were sold by Hanson with reference to the Plat and to the lot numbers on the Plat.  Furthermore, it defies logic to believe Hanson would create a subdivision with a landlocked lot, such as Lot 2, without creating an access easement for future owners to reach the lot.  Therefore, we find there is evidence to support the master's finding of an implied easement for access to Lot 2.  *See Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism*, 377 S.C. 86, 96, 659 S.E.2d 151, 156 (2008) ("Implied easements ask the court to take a deed between grantor and grantee which is silent regarding any grant or reservation of a right to cross one party's land to access the other's and imply what the parties must have meant to include in the deed but did not."); *Gooldy v. Storage Ctr.-Platt Springs, LLC*, 422 S.C. 332, 338, 811 S.E.2d 779, 782 (2018) ("Generally, when a deed references a plat that contains an easement, an implied easement arises even though the deed itself is silent.").

Additionally, we hold the master correctly found the discrepancy between the Plat and the property descriptions in the deeds was a scrivener's error.  The plat book and page numbers referenced in the deeds are the same book and page numbers where the Plat is recorded.  Further, the name on the Plat is the name of the subdivision where the lots are located.  Additionally, Hart failed to produce any evidence of a specific, contrary intention of the grantor.  *See Gooldy*, 422 S.C. at 338, 811 S.E.2d at 782. ("[A] presumption of an implied easement arises unless rebutted by a specific, contrary intention by the grantor.").  Hart admitted he was unable to produce a plat entitled "464 Woods Point Road," even after searching for one; therefore, he was unable to meet his burden of rebutting the presumption of an implied easement.

### B.  Utility Easement

We find the master did not err in finding the Sercus have an easement for utilities. *See Murrells Inlet Corp.*, 378 S.C. at 231, 662 S.E.2d at 455 ("In an action at law tried without a jury, the [master']s findings of fact will not be disturbed on appeal unless there is no evidentiary support for the [master]'s findings."); *id.* at 231, 662 S.E.2d at 454 ("The determination of the existence of an easement is a question of

---

[1] The Plat is titled "The Woods at Lake Murray," while the deeds in the chain of title refer to a plat titled "464 Woods Point Road."

fact in a law action . . . ."); *Carolina Land Co., Inc.*, 265 S.C. at 105, 217 S.E.2d at 19 ("[W]here a deed describes land as is shown as a certain plat, such becomes a part of the deed."); *Boyd*, 369 S.C. at 416, 633 S.E.2d at 139 (explaining "[w]hatever easements are created by implication must be determined as of the time of the severance of the ownership of the tracts involved"). At the time Hanson subdivided the property into four separate lots, it was not known where the future owners would build their respective homes. Therefore, the exact location of the utility lines could not be determined at that point. The Plat would have to establish that utilities were available to the subdivided lots prior to being approved. The Plat references the water and sewer providers and contains a certification that dedicates all easements and rights-of-way. Although the certification is not signed by Hanson, Hart failed to provide any evidence that the certification language was not included on the Plat at the time it was prepared for Hanson. It is clear from the reference to the water and sewer providers, as well as the certification dedicating all rights-of-way, that Hanson intended to grant utility easements to each lot for the benefit of future owners, including the Sercus. *See id.* ("Easements may be implied by necessity, by prior use, from map or boundary references, or from a general plan."); *Hamilton v. CCM, Inc.*, 274 S.C. 152, 158, 263 S.E.2d 378, 381 (1980) ("[T]he intent of the parties as shown by all the facts and circumstances under which a conveyance was made may give rise to an easement by implication."); *id.* ("Circumstances surrounding the origin of an alleged restriction may also be considered in construing that restriction."); *id.* at 158-59, 263 S.E.2d at 381 (holding evidence existed—including a previously prepared plat—to suggest the original designation of an area was conveyed as an "open space" easement). Therefore, we hold the Sercus have an easement for utilities.

In particular, in 2002, Hanson granted SCE&G a right-of-way to construct, maintain, and operate electric lines along the "northern property boundary parallel to Woods Point Road." That easement was recorded in August 2002. The Plat also references Gilbert Summit Rural Water District (Gilbert Water) and Town of Lexington Sewer. Additionally, the Plat contains the certification that dedicates all easements and rights-of-way. Therefore, when Hart purchased his property in 2011, he had constructive notice of these specific utilities. *See Spence v. Spence*, 368 S.C. 106, 119, 628 S.E.2d 869, 876 (2006) ("[C]onstructive or inquiry notice . . . is grounded in an examination of the public record because it is the proper recording of documents asserting an interest or claim in real property which gives constructive notice to the world."); *id.* at 120, 628 S.E.2d at 876 ("The party will be charged by operation of law with all knowledge that an investigation by a reasonably cautious and prudent purchaser would have revealed.").

## II. Trespass

We hold the master properly dismissed Hart's claim for trespass because there were valid easements. *See Murrells Inlet Corp.*, 378 S.C. at 231, 662 S.E.2d at 454 ("The determination of the existence of an easement is a question of fact in a law action . . . ."); *id.* at 231, 662 S.E.2d at 455 ("In an action at law tried without a jury, the [master']s findings of fact will not be disturbed on appeal unless there is no evidentiary support for the [master]'s findings."). As stated above, we find Hanson granted an access easement over Lot 1 to benefit Lot 2 by including the same on the Plat and granted utility easements as referenced in the Plat. Additionally, the easements were granted to all future grantees. Because the Sercus had an access easement and an easement for utilities, we hold there was no trespass. *See Snow v. City of Columbia*, 305 S.C. 544, 552, 409 S.E.2d 797, 802 (Ct. App. 1991) ("The unwarrantable entry on land in the peaceable possession of another is a trespass . . . ."); *id.* ("[I]f one *without license* from the person in possession of land walks upon it, or casts a twig upon it, or pours a bucket of water upon it, he commits a trespass by the very act of breaking the enclosure." (emphasis added)). Additionally, because there was no trespass, we decline to discuss the statute of limitations or laches issues. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

## III. Damages

### A. Actual Damages

We find evidence exists to support the master's award of actual damages; therefore, we affirm. *See Santoro v. Schulthess*, 384 S.C. 250, 267, 681 S.E.2d 897, 906 (Ct. App. 2009) ("This [c]ourt's task in reviewing a damages award is not to weigh the evidence, but to decide if any evidence exists to support the damages award."); *id.* ("[T]his [c]ourt's review on appeal is limited to the correction of errors of law."). The master awarded $50,000 in actual damages based on James's testimony that the rental value of the property was diminished 20% to 25% due to Hart's interference with the easement. The master also found the monthly rental value was $2,100 per month based on James's testimony at the hearing. The master found Hart's actions occurred for eighty-one months and, therefore, the diminution in value totaled $42,525. *See Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 142, 747 S.E.2d 468, 475 (2013) ("The lost rental value of the property is the difference between the rental value absent the trespass or nuisance and the rental value with the trespass or nuisance."); *id.* ("The rental value with the trespass or

nuisance present would be less, in part, because a hypothetical renter would have to suffer the annoyance and discomfort of the nuisance or trespass."); *id.* ("Thus, the lost rental value measures the monetary value of the harm to the property interest."). Additionally, James testified that it would cost $12,000 to $13,000 to replace the concrete damaged by Hart. Finally, Hart did not provide any evidence to contradict the testimony regarding damages. Therefore, we find there was evidence to support the master's award of $50,000.

Additionally, the master did not err in relying on James's testimony as to the value of Lot 2 because a property owner can offer testimony as to the value of his property. *See Cooper v. Cooper*, 289 S.C. 377, 379, 346 S.E.2d 326, 327 (Ct. App. 1986) ("[A] property owner is ordinarily competent to offer testimony as to value of his property.").

### B. Punitive Damages

We hold the master did not err in awarding $100,000 in punitive damages under the "any evidence" standard. *See Santoro*, 384 S.C. at 267, 681 S.E.2d at 906 ("This [c]ourt's task in reviewing a damages award is not to weigh the evidence, but to decide if any evidence exists to support the damages award."); *id.* ("[T]his [c]ourt's review on appeal is limited to the correction of errors of law."). In the order, the master cited *Austin v. Specialty Transportation Services, Inc.*[2] and the ten relevant *Gamble v. Stevenson*[3] factors to consider when awarding punitive damages. Further, the order provides facts to support the master's decision, including (1) that Hart "actively sought to damage and interfere with" the easement, (2) that Hart's "willful conduct" lasted six years, (3) that Hart's testimony was not credible, and (4) that Hart's similar past conduct necessitated a 2013 temporary injunction. The master also found a two-to-one ratio of actual damages to punitive damages was "appropriate under the circumstances." *See Austin*, 358 S.C. at 318, 594 S.E.2d at 877 (holding a "single-digit" ratio "comports with due process"). Therefore, there is evidence sufficiently supporting the master's award of damages.

**AFFIRMED.**

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**

---

[2] 358 S.C. 298, 313-14, 594 S.E.2d 867, 875 (Ct. App. 2004).
[3] 305 S.C. 104, 111-12, 406 S.E.2d 350, 354 (1991).